******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# N. G. *v.* D. S.[*]
# (AC 47892)

Elgo, Suarez and Norcott, Js.

*Syllabus*

The defendant appealed from the trial court's judgment dissolving his marriage to the plaintiff and granting certain other relief. The defendant claimed, inter alia, that the court abused its discretion in awarding alimony to the plaintiff for a period of four years. *Held*:

The trial court did not abuse its discretion in awarding alimony to the plaintiff for a period of four years, as a review of the record led this court to the conclusion that the trial court was mindful of the factors in the statute (§ 46b-82 (a)) governing alimony in determining the alimony to be awarded to the plaintiff and applied those factors to the credible evidence before it.

The trial court did not abuse its discretion when it ordered the defendant to transfer a certain percentage of his 401 (k) plan to the plaintiff, as the court specified in its memorandum of decision that it had considered the criteria set forth in the statute (§ 46b-81) governing the assignment of property and transfer of title, the credible evidence before it, and the closing arguments of counsel, and, contrary to the defendant's assertion, the court was not prohibited from distributing assets accrued after separation but before dissolution.

The trial court did not abuse its discretion in denying the defendant's motion to reargue and reconsider its decision in regard to the marital home, as the defendant failed to assert that there was a controlling principle of law that the court had overlooked or that the court misapplied the law, and the defendant's argument for an opportunity to retain the marital home was inconsistent with the arguments that he presented at trial, in which he insisted that the marital home be sold because the home was undervalued.

Argued January 20—officially released July 21, 2026

---

[*]In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford and tried to the court, *Tindill, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court. *Affirmed*.

*Richard W. Callahan*, for the appellant (defendant).

*Opinion*

SUAREZ, J. The defendant, D. S., appeals from the judgment of the trial court dissolving his marriage to the plaintiff, N. G.[1] On appeal, the defendant claims that the court abused its discretion in (1) awarding alimony for a period of four years, (2) fashioning its property distribution orders, and (3) denying his motion to reconsider.[2] We affirm the judgment of the trial court.

The following procedural history and facts, as found by the court, are relevant to this appeal. The parties were married on May 12, 2018, in Milford. There were no children issue of the marriage. On September 3, 2021,

[1]Alexander J. Trembicki represented the plaintiff before the trial court. On September 13, 2024, Trembicki filed a motion before this court for permission to withdraw his appearance, which this court granted on September 27, 2024. The plaintiff did not file a brief or otherwise participate in this appeal. We, therefore, have considered this appeal on the basis of the defendant's brief, the defendant's oral argument and the record only.

[2]We note that, in his statement of issues, the defendant characterized the claims raised on appeal as follows: "(1) Based upon the uncommon procedural circumstances of this case, and the statutory factors, did the trial court abuse its equitable discretion by ordering spousal support for four years after justice was delayed?

"(2) Based upon the uncommon procedural circumstances of this case, and the statutory factors, did the trial court abuse its equitable discretion by dividing retirement assets acquired after justice was delayed?

"(3) Did the trial court err by denying the defendant's motion to reconsider its order [regarding] the disposition of the marital real property?" We have reframed the claims in this appeal for clarity and to more accurately reflect the arguments set forth in the body of the defendant's brief. See *Doe* v. *Quinnipiac University*, 218 Conn. App. 170, 173 n.4, 291 A.3d 153 (2023).

the plaintiff commenced this dissolution action. In her complaint, the plaintiff sought, inter alia, a dissolution of marriage, alimony, an equitable distribution of assets, and attorney's fees.

A trial for the dissolution of marriage was scheduled to begin on March 13, 2023. The court, however, rescheduled the trial for April 13, 2023. On April 13, 2023, the court commenced the trial in the judicial district of Ansonia-Milford. The trial, however, was interrupted by other court obligations and was continued to November 13, 2023. On September 5, 2023, the court declared a mistrial because the judge had been reassigned from the judicial district of Ansonia-Milford to the Regional Family Trial Docket in the judicial district of Middlesex. A new trial was scheduled to begin on February 13, 2024, in the judicial district of Ansonia-Milford but the trial did not proceed due to a snowstorm. Thereafter, the case was referred to the Regional Family Trial Docket. On February 20, 2024, the court commenced a trial, which continued over the course of three nonconsecutive dates. The court heard testimony from the plaintiff and the defendant, and various exhibits were admitted into evidence.

On May 29, 2024, the court issued a memorandum of decision dissolving the parties' marriage and issuing various financial orders. In its memorandum of decision, the court found that the plaintiff was sixty-three years old and had earned an associate degree and a bachelor's degree in marketing from the Fashion Institute of Technology in New York. In 2001 or 2002, the plaintiff became a licensed realtor. In October 2010, the plaintiff was diagnosed with breast cancer and her illness, surgeries, and treatment through 2012 severely limited her ability to work full-time. The court further found that the plaintiff had been cancer free since 2012, appeared to be in fair health and had been working sporadically since then. The court noted that the plaintiff was eligible to receive $1086 monthly from Social Security retirement

benefits as of the date of trial and would be eligible to receive $1127 monthly beginning in September 2024.

The court found that the defendant was fifty-five years old and had earned a bachelor's degree in mathematics from Loyola University, a master's degree in economics from George Mason University, and a master's degree in business administration from Wake Forest University. At the time of trial, he was employed at Barclays Bank in New York as the Director of Loss Forecasting. According to the court, he appeared to be in good health.

With respect to the parties' income, the court found that the defendant earned more than the plaintiff during the course of the marriage and had a greater future earning capacity. The court further found that the defendant contributed more to the parties' household expenses than the plaintiff and that the defendant was content with the plaintiff's nominal financial contributions to the household expenses, given her limited employment earnings. The court credited the defendant's testimony that he paid approximately $4000 monthly for the parties' expenses. The court also found that both parties had significant pension and retirement accounts.[3] The court found that, as of the date of the parties' marriage, the defendant's Barclays 401 (k) plan had a value of $32,689.46 and, as of December 31, 2023, that value had increased to $340,925.26.

With respect to the marriage, the court found that the parties met in 2011, when the defendant was getting divorced from his previous wife and was looking for a short-term apartment or condominium rental. The plaintiff assisted the defendant with two rental properties and the sale of his former marital home. They began a personal relationship in July 2012 and moved in

[3]Although the court did not make a specific finding as to the total net value of each party's retirement plans, the plaintiff's financial affidavit dated February 12, 2024, listed five separate plans with a total net value of $216,065.57, and the defendant's March 25, 2024 financial affidavit listed five separate plans with a total net value of $1,215,054.20.

together in the summer of 2013 at the plaintiff's Milford residence (marital residence).

The court found that the parties fought about the defendant's infidelity and his lying about his infidelity. These arguments sometimes evolved into physical altercations during which the plaintiff sometimes sustained injuries. These altercations also created periods of separation between the parties, either due to the issuance of a criminal protective order, or by the parties' voluntary decisions to physically separate. The court noted that, in November 2018, both parties were arrested for disorderly conduct arising from an incident in which the defendant slammed the plaintiff against a vanity and the plaintiff hit the defendant with a hairbrush. As a result of this incident, the plaintiff sustained injuries to her ribs which required medical attention. The court also noted another altercation in April 2019, in which the plaintiff sustained injuries and briefly lost consciousness. In late June or early July 2019, the defendant was arrested for a physical altercation with the plaintiff that led to the issuance of a criminal protective order. In July or August 2020, the parties moved into a rental home in Delray Beach, Florida, and rented out the marital residence. The court noted that the parties' arguments and physical altercations continued in Florida and, in May 2021, the plaintiff obtained a restraining order against the defendant. The court specifically found that the defendant minimized the violence between the parties and blamed the plaintiff for the physical altercations that resulted in her injuries. The parties have not resided together since May 2021, when the plaintiff left the rental home in Florida and returned to the marital residence in Connecticut.

In its memorandum of decision, the court noted that it had "carefully considered the testimony, assessed the credibility of the parties, reviewed each exhibit submitted into evidence, and taken into consideration the parties' closing arguments." It also noted that it "considered the applicable statutory provisions, including [General

Statutes] §§ 46b-81 and 46b-82, and relevant case law, including *Krafick* v. *Krafick*, 234 Conn. 783, [663 A.2d 365] (1995), and *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 544, [429 A.2d 801] (1980), to make its orders and findings.''

The court concluded that, ''[b]ased on the credible evidence before [it] and in consideration of the factors enumerated in § 46b-82 an award of alimony to the plaintiff [was] warranted.'' The court ordered the defendant to pay monthly alimony in the amount of $4000 beginning in June 2024 and continuing until June 2028. The alimony was modifiable as to term only.

With respect to the marital residence, the court ordered that the defendant quitclaim all his rights, title, and interest to the plaintiff. The court further ordered that the plaintiff was to have exclusive use and possession of the property and was to be solely responsible for all of the costs associated with ownership of the property. The court ordered the plaintiff to refinance the mortgage and remove the defendant's name from the deed and mortgage no later than June 1, 2025. In the event the plaintiff was unable to refinance and remove the defendant's name from the deed and mortgage by June 1, 2025, the court ordered the home to be listed for sale by June 22, 2025. The court further ordered the plaintiff to pay the defendant $150,000 within thirty days of the closing date of either the refinance or the sale of the property.[4]

Additionally, the court ordered that each party was to retain the funds in the bank accounts listed on their respective financial affidavits and any funds in joint accounts to be split equally. The court ordered that both parties were to be responsible for the debts and liabilities listed on their respective financial affidavits. As to the parties' retirement assets, the court ordered the defendant to transfer to the plaintiff 60 percent of the value

[4] The court awarded to the defendant a property located in Maryland, free and clear of any claim or interest by the plaintiff. The defendant was to be responsible for the costs associated with ownership of this property.

accrued in his Barclays 401 (k) plan from May 12, 2018, to May 29, 2024.

On June 18, 2024, the defendant filed a motion to reargue and reconsider.[5] In this motion, the defendant argued, inter alia, that the court should reconsider its alimony award, its property distribution orders regarding the sale of the marital home, and its distribution of the defendant's Barclays 401 (k) account. Regarding the alimony award, the defendant argued that the facts of the present case did not support a permanent periodic alimony award, as the parties were married late in life and were married for only thirty-six months before the plaintiff commenced the present action. He argued that the alimony award, if any, should be fixed for a short term to rehabilitate the plaintiff. Moreover, he argued that the term of the award should be less than four years, "as the defendant should not shoulder the prejudice caused by the delays in trial." Lastly, he argued that the four year term in alimony, in addition to the three years of the pendente lite period that he paid toward the plaintiff's expenses, resulting in a seven year term, should be fixed.

The defendant also sought to reargue the court's order that, if the plaintiff was unable to refinance the mortgage on the marital residence, the marital residence was ordered to be listed for sale and the plaintiff was to pay the defendant $150,000 within thirty days of the closing date of the sale. Specifically, the defendant asserted that he was seeking "the same rights that the court afforded to the plaintiff. That is, if the plaintiff [was] unable to pay the defendant $150,000 and refinance the real property within the [one] year required by the court order . . . [he

---

[5]The plaintiff filed a motion titled "[m]otion to reargue/reconsider/ clarify," also on June 18, 2024. In this motion, the plaintiff sought clarification on various dates and corrections for scrivener's errors in the court's memorandum of decision. The plaintiff also argued that the court should reconsider various orders on the basis of allegedly outdated or incorrect information from the parties' financial affidavits. The court granted the motion in part, and, in its corrected memorandum of decision dated July 23, 2024, clarified the relevant dates in various orders and corrected scrivener's errors. These clerical revisions are not relevant to our disposition of this appeal.

should have] the opportunity to refinance the mortgage within [six] months and to pay the plaintiff $150,000.''

As to the Barclays 401 (k) account, the defendant argued that the court's order dividing the gains in the account from the date of marriage to the date of dissolution rewards the plaintiff for the delay in commencing trial and punishes him. He argued that the more appropriate period to divide the asset was from the date of marriage to one year from the date that the action was commenced.[6]

On July 23, 2024, the court granted the defendant's motion to reargue and reconsider in part and issued a corrected memorandum of decision. With respect to the award of alimony, the court denied the request. The court, however, indicated that ''[i]t was the court's intention to limit the defendant's alimony obligation and it agrees that the award should be time limited. The corrected memorandum of decision . . . [reflects] that the award is modifiable as to amount only. The maximum term of alimony is from June 3, 2024, to June 3, 2028.'' The court also denied ''[t]he defendant's request to reargue the real estate provisions of its decision . . . .'' Both parties subsequently filed new motions to reargue and reconsider the corrected memorandum of decision, which the court denied on August 16, 2024.[7] Thereafter, on February 14, 2025, the defendant filed a motion for articulation and rectification, which the court denied.[8] This appeal followed. Additional facts and procedural history will be set forth as necessary.

[6]Although the defendant does not cite to any authority, he argues in his brief before this court that ''[i]t is known in the family bar, that in furtherance of its role to dispense and provide justice, the policy makers within the Connecticut judiciary want all family cases completed via separation agreement or trial within one year of filing absent complicating circumstances.''

[7]The defendant does not appeal the court's August 16, 2024 order denying the motion to reargue.

[8]The defendant filed a motion in this court for review of the trial court's decision denying his February 14, 2025 motion for articulation and rectification. On June 10, 2025, this court granted the motion to review, but denied the relief requested.

We begin by setting forth the well settled standard of review in dissolution matters. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Pencheva-Hasse* v. *Hasse*, 221 Conn. App. 113, 121–22, 300 A.3d 1175 (2023).

I

The defendant first claims that the court abused its discretion in awarding alimony for a period of four years. Specifically, the defendant argues that, "based upon the uncommon procedural facts of this case, and the statutory factors, the trial court abused its equitable discretion by awarding four years of alimony." He maintains that the trial was delayed due to circumstances "not caused by the defendant" and that, "after three years of pendente lite support, the plaintiff was afforded more than enough time to 'rehabilitate' herself."[9] We are not persuaded.

The following additional facts and procedural history are relevant to this claim. In her proposed orders to the court, the plaintiff requested alimony in the amount of 40 percent of the defendant's gross income per month for four years. At trial, the plaintiff testified that she was "basically retired" and that the defendant had indicated

---

[9] In his brief before this court, the defendant claims that the matter was delayed by the plaintiff changing counsel and the court's own scheduling conflicts. The defendant does not claim, however, that the court abused its discretion in granting the various continuances.

to her around the time they were married that he did not want her to work anymore. She further testified that her full retirement age was sixty-seven, and that she was "hoping [the defendant would] help [her] with [supporting herself until her full retirement age]." The plaintiff also testified that she planned on supporting herself after the dissolution of her marriage to the defendant by starting a new business and that she wanted to foster a child.

The defendant testified that he "[felt] like [he] [had] paid approximately $4000 a month towards [the plaintiff's] expenses for the past three years. That should be considered time served against any alimony." The defendant further testified that it had been six years since he married the plaintiff and that they had been divorcing and living apart for three of those years. During closing arguments, counsel for the defendant argued that "[t]hese folks have been . . . in the divorcing process just shy of the amount of time they lived together. And as my client so elegantly put it, he has supported this woman, and he's entitled to time served. . . . [T]hat should be factored in in the court's financial decisions." Counsel for the defendant further argued that the plaintiff's claim for 40 percent of the defendant's income as alimony would equate to "$3038 per week . . . that is simply not equitable at all."

As previously mentioned in this opinion, the court noted in its corrected memorandum of decision that it had "carefully considered the testimony, assessed the credibility of the parties, reviewed each exhibit submitted into evidence, and taken into consideration the parties' closing argument. The court has also considered applicable statutory provisions, including . . . §§ 46b-81 and 46b-82, and relevant case law, including *Krafick* v. *Krafick*, [supra, 234 Conn. 783], and *Ridgeway* v. *Ridgeway*, [supra, 180 Conn. 544], to make its orders and findings." On the basis of those considerations, the court found that an award of alimony was warranted and

ordered the defendant to pay $4000 monthly in alimony to the plaintiff for four years.

"In reviewing the alimony award at issue, we note that the scope of our review of a trial court's exercise of its broad discretion in marital dissolution cases is limited to whether the court correctly applied the law and reasonably could have concluded as it did. . . . We make every reasonable presumption in favor of the correctness of the trial court's action. . . . It is, however, well established that, in awarding alimony, the trial court must take into account all of the statutory factors enumerated in . . . § 46b-82 (a) and that its failure to do so constitutes an abuse of discretion. See *Greco* v. *Greco*, [275 Conn. 348, 360, 880 A.2d 872 (2005)] (trial courts must 'consider all of the criteria enumerated in . . . § 46b-82'). The trial court does not need to give each factor equal weight or make express findings as to each factor, but it must consider each factor. Id., 355; see also *Burns* v. *Burns*, 41 Conn. App. 716, 726, 677 A.2d 971 ('"Although a specific finding . . . is not required, the record must indicate the basis for the trial court's award." . . . Sufficient evidence must exist to support the award, and the award may not stand if it is logically inconsistent with the facts found or the evidence.' . . .), cert. denied, 239 Conn. 906, 682 A.2d 997 (1996); cf. *Simmons* v. *Simmons*, 244 Conn. 158, 180–81, 708 A.2d 949 (1998) (trial court abused its discretion in failing to consider defendant's age, which was 'significant' omission in court's failure to award defendant any alimony). In addition, it is a 'long settled principle that the defendant's ability to pay is a material consideration in formulating financial awards.' . . . Finally, the trial court's financial orders must be consistent with the purpose of alimony: to provide continuing support for the nonpaying spouse, who is entitled to maintain the standard of living enjoyed during the marriage as closely as possible. *Hornung* v. *Hornung*, 323 Conn. 144, 162, 146 A.3d 912 (2016); id., 163 (plaintiff's efforts as homemaker, primary caretaker of parties' children increased defendant's earning capacity at expense of her own earning capacity, thus entitling

her, postdissolution, to maintain standard of living parties enjoyed during marriage to extent possible); see *Blake* v. *Blake*, 211 Conn. 485, 498, 560 A.2d 396 (1989) ('periodic . . . alimony is based primarily upon a continuing duty to support'). When exercising its broad, equitable, remedial powers in domestic relations cases, a court 'must examine both the public policy implicated and the basic elements of fairness.'" (Citations omitted; footnote omitted.) *Oudheusden* v. *Oudheusden*, 338 Conn. 761, 768–69, 259 A.3d 598 (2021).

On appeal, the defendant argues that "[t]he alimony award itself was an abuse of discretion" because the plaintiff "was afforded more than enough time to 'rehabilitate' herself." The defendant argues that, but for "the uncommon circumstances of the delay in this case that was not caused by the defendant . . . the alimony term would have concluded in September 2026 . . . ." He argues that the purpose of alimony awards are "(1) to maintain the standard of living that was established during the marriage by the supporting spouse; or (2) to provide some support for a time limited basis so a former spouse can rehabilitate their earing capacity and support themselves." (Emphasis omitted.) The defendant asserts that the alimony order awarded to the plaintiff failed to promote the sound policy of providing an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency. The defendant, therefore, requests that this court reverse the judgment as to the alimony order and vacate that order or, in the alternative, to reduce the alimony term to end in September 2026.

"[Section] 46b-82 (a) provides in relevant part that [i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability,

estate and needs of each of the parties and the [division of property made] pursuant to [§] 46b-81 . . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor. . . .

"Time limited alimony is often awarded. . . . The trial court does not have to make a detailed finding justifying its award of time limited alimony. . . . Although a specific finding for an award of time limited alimony is not required, the record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand. . . . In addition to being awarded to provide an incentive for the spouse receiving support to use diligence in procuring training or skills necessary to attain self-sufficiency, time limited alimony is also appropriately awarded to provide interim support until a future event occurs that makes such support less necessary or unnecessary." (Citation omitted; internal quotation marks omitted.) *Ingles* v. *Ingles*, 216 Conn. App. 782, 795–96, 286 A.3d 908 (2022).

"In reviewing an alimony order, we do not substitute our judgment for that of the trial court, which is in the best position to fashion an effective and equitable arrangement. An award of alimony is permissive, not mandatory, and rest[s] in the sound discretion of the trial court . . . ." (Internal quotation marks omitted.) *D. S.* v. *D. S.*, 351 Conn. 1, 35, 328 A.3d 111 (2025).

To the extent that the defendant argues that the court abused its discretion in awarding alimony for a period of four years from the date of dissolution given the length of the parties' marriage and the unique procedural circumstances of this case, we note that our appellate courts

have declined to articulate a bright-line rule as to how long a marriage must last before a party is entitled to "lifetime alimony." Instead, our appellate courts have noted that we must simply determine whether the court abused its discretion by granting an award of lifetime alimony on the basis of its findings as to the statutory factors enumerated in § 46b-82. See, e.g., *McMellon* v. *McMellon*, 116 Conn. App. 393, 394, 396, 976 A.2d 1 (upholding lifetime alimony award of $325 weekly for six year marriage), cert. denied, 293 Conn. 926, 980 A.2d 911 (2009); see also *Keenan* v. *Casillo*, 149 Conn. App. 642, 663–64, 663 n.7, 89 A.3d 912 (upholding lifetime alimony award of $1200 per week to forty year old woman after three year marriage), cert. denied, 312 Conn. 910, 93 A.3d 594 (2014); *Langley* v. *Langley*, 137 Conn. App. 588, 590–91, 595, 604, 49 A.3d 272 (2012) (upholding rehabilitative alimony award of $175 per week for five years from date of dissolution after three year marriage).

Our review of the record leads us to the conclusion that the court was mindful of the statutory factors in determining the alimony to be awarded to the plaintiff and applied those factors to the credible evidence before it. Accordingly, we conclude that the court did not abuse its discretion in awarding alimony to the plaintiff.

II

The defendant next claims that the court abused its discretion in its orders related to property distribution. Specifically, the defendant argues that the court abused its discretion when it ordered the defendant to transfer 60 percent of the value of his Barclays 401 (k) plan "acquired after the uncommon and unfair procedural delay in this case." He maintains that it was "an abuse of . . . discretion to divide [his] 401 (k) acquired after 2022." We are not persuaded.

The defendant's claim requires little discussion. "In dissolution proceedings, the court must fashion its financial orders in accordance with the criteria set forth in . . . § 46b-81 (division of marital property) . . . . Pursuant to

§ 46b-81 (c), the court shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. . . .

"While the trial court must consider the delineated statutory criteria . . . no single criterion is preferred over others, and the court is accorded wide latitude in varying the weight placed upon each item under the peculiar circumstances of each case. . . . A trial court . . . need not give each factor equal weight . . . or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor. . . .

"Importantly, § 46b-81 (a) permits the farthest reaches from an equal division as is possible, allowing the court to assign to either the husband or wife all or any part of the estate of the other. . . . On the basis of the plain language of § 46b-81, there is no presumption in Connecticut that marital property should be divided equally prior to applying the statutory criteria. . . . Additionally, [i]ndividual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. . . . As previously noted in this opinion, we will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Pencheva-Hasse* v. *Hasse*, supra, 221 Conn. App. 129–30.

"[W]hen a trial court states in its memorandum of decision that it has considered the factors listed in § 46b-81 (c) in fashioning an order distributing marital property, the judge is presumed to have performed [his or her] duty unless the contrary appears [from the record]." (Internal quotation marks omitted.) Id., 130–31. In the present case, the court specified in its memorandum of decision that it considered the criteria set forth in § 46b-81 and the credible evidence before it and that it had considered the closing arguments of counsel. The court also noted in its memorandum of decision that both parties had significant pension and retirement accounts. As previously stated in this opinion, the defendant's counsel argued in closing argument that the court should consider the delay in the dissolution proceedings following the parties' separation in crafting its financial orders. The court, in the exercise of its broad discretion, awarded 60 percent of the accrued value of the defendant's Barclays 401 (k) plan to the plaintiff. Contrary to the defendant's claim, the court was not prohibited from distributing assets accrued after separation but before dissolution. See *Wendt* v. *Wendt*, 59 Conn. App. 656, 661, 757 A.2d 1225 ("[i]n a dissolution action, marital property is valued as of the date of dissolution, not the date of separation" (internal quotation marks omitted)), cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

Accordingly, we conclude that the defendant has failed to demonstrate that the court's orders distributing his Barclays 401 (k) plan constituted an abuse of its discretion.

III

The defendant next claims that the court abused its discretion when it denied his motion to reargue and reconsider. Specifically, the defendant claims that it is "error for a court of equity not to give joint owners the same opportunity before the property is sold to a third party." We are not persuaded.

We begin with the following legal principles that guide our analysis of the defendant's claim. "[I]n reviewing a court's ruling on a motion to open, reargue, vacate or reconsider, we ask only whether the court acted unreasonably or in clear abuse of its discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did. . . . [T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Prioleau* v. *Agosta*, 232 Conn. App. 94, 101–102, 335 A.3d 93 (2025).

The additional following procedural history and facts, as gleaned from the record or found by the court, are relevant to our resolution of this claim. The plaintiff first acquired the marital home in 2004, but she fell behind on the mortgage and the home went into foreclosure around 2012. The plaintiff arranged a short sale in which the defendant purchased the marital home for $345,000, with $250,000 of the purchase price funded by the plaintiff. The defendant borrowed $95,000 from his sister to finance the remainder of the purchase price, and he then took out a home equity line of credit in order to repay his sister. The defendant moved into the marital home with the plaintiff in 2013. In April 2018, the defendant transferred 50 percent of his ownership interest in the marital home back to the plaintiff through a quitclaim deed.

In her proposed orders, the plaintiff requested that the defendant quitclaim his remaining 50 percent interest

in the marital home to her and close the home equity line of credit. The defendant, by contrast, requested that the marital home be "immediately listed for sale until sold with an agreed upon licensed real estate agent at an agreed upon price. . . . At closing, after the payment for the equity line and all usual and customary closing costs, the net proceeds shall be divided equally between the parties."

At trial, the plaintiff testified that she was aware that the defendant wanted the marital home sold immediately, but she argued that she wanted the home because it was her house. The plaintiff stated that she wanted the court to order that the outstanding balance on the home equity line credit be paid and that the court order the defendant to transfer his interest in the property to her. The defendant testified that he wanted the house to be sold because "I think that's the only way to . . . fairly get the equity that's in the house out of the house." The defendant further testified that the appraisals submitted as exhibits at trial "understate the true market value of the property" because "people have made unsolicited offers for the property. . . . [O]bviously the real estate market has been kind of hot . . . in recent years, and [the location of the marital home] is kind of . . . an in demand area." The defendant then testified that the property is "a rather large lot right across the street from the beach" and that, although most of the houses in the area are on one-tenth of an acre, the marital home sits on "about two-thirds" of one acre. During closing arguments, the defendant's counsel argued that, "in this market, lots of houses sell way more than they're valued at. Perhaps the simplest way to resolve what the house is worth is you put it on the open market."

In its memorandum of decision, the court found that "[b]oth parties benefited from the short sale of the [marital home], the plaintiff more so than the defendant. The plaintiff was able to get the home out of foreclosure, have $550,000 in debt forgiven, pay off credit card debt, and receive cash as a result of the defendant purchasing

the home for $345,000." As previously noted in this opinion, the court ultimately awarded the marital home to the plaintiff and ordered the defendant to quitclaim his interest to her. The court further ordered that the plaintiff was to refinance the mortgage and remove the defendant from the mortgage, or list the marital home for sale by June 22, 2025. The plaintiff was further ordered to pay the defendant $150,000 within thirty days from the closing date of either the sale or the refinancing of the mortgage.

In his motion to reargue and reconsider dated June 18, 2024, the defendant, for the first time, requested that the court give him an opportunity to retain the marital home if the plaintiff could not refinance the home. The court denied the defendant's motion to reconsider as to the real estate provisions of its decision. In that motion, the defendant did not assert that there was a controlling principle of law which the court overlooked or that the court misapplied the law. The defendant only argued in his motion that he was a joint owner of the marital property and should thus have had an opportunity to retain the marital home after the dissolution of his marriage to the plaintiff. The defendant's argument for an opportunity to own the marital home is inconsistent with the arguments that he presented at trial, in which he insisted that the marital home be sold because the home was undervalued. The defendant's motion was "effectively nothing more than an attempt to have an impermissible second bite of the apple . . . ." (Citation omitted; internal quotation marks omitted.) *Prioleau* v. *Agosta*, supra, 232 Conn. App. 104.

Accordingly, we conclude that the court did not abuse its discretion in denying the defendant's motion to reargue and reconsider.

The judgment is affirmed.

In this opinion the other judges concurred.